[29 NYS3d 322]

In the Matter of HOWARD RAAB, an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, April 12, 2016

---

## APPEARANCES OF COUNSEL

*Jorge Dopico, Chief Counsel, Departmental Disciplinary Committee*, New York City (*Elisabeth A. Palladino* of counsel), for petitioner.

*Lewis Brisbois Bisgaard & Smith LLP* (*Rebecca A. Barrett* of counsel), for respondent.

## OPINION OF THE COURT

Per Curiam.

Respondent Howard Raab was admitted to the practice of law in the State of New York by the First Judicial Department on January 15, 1973. At all times relevant to this proceeding, respondent maintained an office for the practice of law in Florida, where he was admitted in 1983. Respondent's current registered address is in New Mexico, where he is admitted to practice.

The Departmental Disciplinary Committee (the Committee) seeks to impose reciprocal discipline, pursuant to Rules of the Appellate Division, First Department (22 NYCRR) § 603.3, predicated on an order issued by the Supreme Court of Florida on April 10, 2014, which publicly reprimanded respondent for engaging in a consensual sexual encounter with a matrimonial client during the course of his representation. The Committee moves for an order imposing reciprocal discipline in the form of a two-year suspension, or, in the alternative, sanctioning respondent as this Court deems appropriate. In response, respondent requests that he be permitted to resign pursuant to 22 NYCRR 603.11.

The Florida Bar filed a complaint against respondent in 2013, charging him with engaging in misconduct by having sexual relations with a matrimonial client during the course of the representation. In 2014, respondent, represented by counsel, entered into a stipulation and consent judgment whereby he admitted that, inter alia, a client retained him in 2008 to represent her in a dissolution of marriage proceeding, and that in 2009 "he did engage in one isolated and consensual improper personal encounter with [his client] at the time that her case

was concluding."* He consented to a public reprimand and agreed to pay the costs incurred by the Florida Bar in connection with the disciplinary proceeding. The Supreme Court of Florida approved in full an uncontested Referee's report—recommending discipline in accordance with the stipulation and consent judgment—and publicly reprimanded respondent by order dated April 10, 2014.

In his affidavit of resignation, respondent acknowledges his admission of misconduct in the Florida proceedings. He further acknowledges that his resignation is freely and voluntarily rendered; that he is aware of these disciplinary proceedings; that he would be unable to defend himself on the merits against charges predicated on the allegations of his misconduct in Florida; and that he would be unable to defend himself on a charge that the misconduct reflects adversely on his fitness as a lawyer.

We find that respondent's misconduct contravenes New York's strong public policy prohibiting lawyers from engaging in sexual relations with clients in domestic relations matters during the course of their representation (see Rules of Professional Conduct [22 NYCRR 1200.0] rule 1.8 [j] [1] [iii] ["A lawyer shall not . . . in domestic relations matters, enter into sexual relations with a client during the course of the lawyer's representation of the client"]). Although this Court noted in 1991 that "no jurisdiction in the United States ha[d] adopted an ethical code provision expressly proscribing sexual involvement between a lawyer and a client, whether the representation involves a matrimonial matter or otherwise" and that the disciplinary rules then in effect "contain[ed] no such prohibition" (*Edwards v Edwards*, 165 AD2d 362, 368 [1st Dept 1991]), this is clearly no longer true (and has not been for quite some time).

In 1993, the late Chief Judge Judith S. Kaye "announced sweeping changes" to matrimonial practice, including the prohibition of "sexual relations between attorney and client during the course of representation" (Edward A. Adams, *Divorce Law Reforms Unveiled*, NYLJ, Aug. 17, 1993 at 2, col 4). The

---

* Respondent further admitted that his conduct violated Florida Bar Rules rule 4-8.4 (d) (prohibiting conduct in connection with the practice of law that is prejudicial to the administration of justice) and (i) (prohibiting sexual conduct with a client that exploits or adversely affects the interests of the client or the lawyer-client relationship). The latter is the version of Florida Bar Rules rule 4-8.4 (i) that was in effect at the time of respondent's misconduct.

rule was approved by the Presiding Justices of all four departments of the Appellate Division following a May 1993 report by the Committee to Examine Lawyer Conduct in Matrimonial Actions, and was incorporated into 22 NYCRR part 1400 of the court rules (and later moved to DR 1-102 [a] [7] [22 NYCRR 1200.3 (a) (7)] of the Code of Professional Responsibility). Although the rule originally applied only in the context of domestic relations matters, in 1999 restrictions on lawyers' sexual conduct with clients were expanded to include all areas of practice, and the language of the rule was again moved to DR 5-111 (22 NYCRR 1200.29-a).

The policy is now codified in rule 1.8 (j) of the Rules of Professional Conduct, which superseded the Code of Professional Responsibility on April 1, 2009. The current rule, like its predecessors, recognizes that because a sexual relationship between a lawyer and client creates the risk of impairing the professional judgment of the lawyer, and rendering the client unable to make rational decisions related to his or her case, the relationship may be detrimental to the client's interests. As such, "sexual relations between lawyers and their clients are dangerous and inadvisable" (rule 1.8 Comment [17]). And while the rule allows for a degree of discretion with respect to lawyers in other areas of practice (*see* rule 1.8 [j] [1] [i], [ii]), it categorically forbids sexual relations with domestic relations clients during the pendency of the representation (rule 1.8 [j] [1] [iii]).

> "Because domestic relations clients are often emotionally vulnerable, domestic relations matters entail a heightened risk of exploitation of the client. Accordingly, lawyers are flatly prohibited from entering into sexual relations with domestic relations clients during the course of the representation even if the sexual relationship is consensual and even if prejudice to the client is not immediately apparent" (rule 1.8 Comment [17]).

For these reasons, notwithstanding respondent's position that the improper relationship with his client in the Florida divorce proceeding was an isolated, consensual incident at the time the case was drawing to a close, his misconduct was in clear violation of rule 1.8 (j) (1) (iii) and cannot be ignored. Moreover, although the Committee requests reciprocal discipline, we find that disciplinary resignation is an appropriate resolution of this matter (*see Matter of Valley*, 123 AD3d 176 [1st Dept 2014]; *Matter of Kelly*, 226 AD2d 1 [1st Dept 1996]).

Accordingly, the Committee's motion is granted to the extent of accepting respondent's disciplinary resignation pursuant to 22 NYCRR 603.11, and striking his name from the roll of attorneys and counselors-at-law in the State of New York, effective immediately.

MAZZARELLI, J.P., SWEENY, ACOSTA, ANDRIAS and MOSKOWITZ, JJ., concur.

Respondent's resignation accepted and his name stricken from the roll of attorneys and counselors-at-law in the State of New York.